In re William Lee SWIFT, Debtor.

**FOUNDERS BANK & TRUST COMPANY, Plaintiff,**

v.

**William Lee SWIFT, Defendant.**

**Bankruptcy No. 85–4371–A.**

**Adv. No. 86–378.**

United States Bankruptcy Court,
W.D. Oklahoma.

April 27, 1987.

Ken Jones, Oklahoma City, for Founders Bank and Trust Co.

David Kline and Deborah Fortune, Oklahoma City, for debtor.

MEMORANDUM OF DECISION

RICHARD L. BOHANON, Chief Judge.

The issues in this case concern a debtor's pre-bankruptcy planning and an objection to his discharge. Founders Bank & Trust Company, a creditor, brought this complaint objecting to the discharge pursuant to 11 U.S.C.A. § 727(a)(2) and (4) (1979). The Bank bases its objection upon three transfers of property, contending they were not disclosed or were made "with intent to hinder, delay or defraud" creditors.

Plaintiff-bank holds a guaranty executed by Swift for a corporate debt. In 1985 it filed a state court action seeking to enforce the guaranty. Swift filed his bankruptcy petition prior to disposition of that case.

About a month preceding his bankruptcy petition the debtor paid a note secured by a second mortgage on his exempt homestead in the amount of $17,906. Plaintiff contends the payment goes beyond proper exemption planning because Swift used non-exempt cash to increase the value of the exempt property.

The second transaction concerns transfer of $750 into an investment for Swift's son made 5 months before bankruptcy which was not disclosed in the statement of financial affairs.

The third concerns 90 acres which Swift purchased in 1983 for $35,000 on a contract for deed with an initial $7000 payment. The balance of the purchase price was carried by the seller at 10% interest. A year later he sold this property to his father pursuant to a contract for deed for a total purchase price of $35,305 at 6½% interest.

His father made a $305 initial payment and monthly payments to Swift of approximately $305. Both contracts for deed were disclosed in the bankruptcy schedules.

■ The evidence concerning transfer of the 90 acres and the explanation given by Swift convince us the transfer was not made with the requisite intent to hinder, delay or defraud creditors. Swift testified the property was transferred to his father because he was unable to make the contractual payments and it was non-income producing. Moreover, the evidence shows the transfer was for a fair consideration, and the disparity between interest rates or down payments is not significant. The circumstances of this transaction, including subsequent conduct of the parties, do not establish fraudulent intent. *Farmers Co-Operative Association of Talmage, Kansas v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982).

■ The undisclosed transfer of $750 to an investment for Swift's son was also without fraudulent intent. 11 U.S.C.A. § 727(a)(4)(A) (1979). The testimony established debtor regularly made similar investments for his son to defray future educational expenses.

The debtor and his accountant both testified the $750 transfer was not disclosed because of the established pattern of investing for his son's education. This testimony is persuasive and we find the transfer a routine gift to debtor's son. Accordingly, disclosure was not required.[1]

■ The final transaction involves debtor's payment of the $17,906 second mortgage note shortly before filing his bankruptcy petition. The debtor contends this payment was proper exemption planning. 3 *Collier on Bankruptcy* ¶ 522.08[4] (15th ed. 1986). And, conversion of non-exempt cash into exempt assets on the eve of bankruptcy is not, of itself, grounds to deny discharge. *Federal Land Bank of Omaha v. Ellingson (In re Ellingson)*, 63 B.R. 271 (Bankr.N.D.Iowa 1986). Plaintiff contends

the transfer was made "with intent to hinder, delay or defraud" creditors or the trustee. 11 U.S.C.A. § 727(a)(2).

Plaintiff relies on *Raymos v. Collins (In re Collins)*, 19 B.R. 874 (Bankr.M.D.Fla. 1982), and *First Texas Savings Association, Inc. v. Reed (In re Reed)*, 11 B.R. 683 (Bankr.N.D.Tex.1981) *aff'd* 700 F.2d 986 (5th Cir.1983). *Collins* adopts the rationale of the bankruptcy court in *Reed* and recognizes "each case will rise or fall by the weight of the merits of the case." 19 B.R. at 877. Similar to both those cases is the fact the debtor converted business assets for the purpose of placing them beyond the reach of creditors. Furthermore, in *Collins* the debtor failed to disclose the transfer which the trustee discovered independently.

Plaintiff also contends the payment of the second mortgage note violated the Oklahoma Uniform Fraudulent Transfer Act. Okla.Stat. tit. 24, §§ 112–123 (Supp. 1986). The Bank contends certain "badges of fraud" are present, where existence stamps the transfer as fraudulent. *Id.* § 116(B); *Hildebrand v. Harrison*, 361 P.2d 498 (Okla.1961). Specifically, the Bank contends the note was paid when debtor was insolvent and during pendency of its complaint against him. *Ebey-McCauley Co. v. Smith*, 353 P.2d 23, 28 (Okla. 1960).

Under both the Fraudulent Transfer Act and the Bankruptcy Code actual intent to hinder, delay or defraud must be shown by the complaining creditor. *See Bank of Pennsylvania v. Adlman (In re Adlman)*, 541 F.2d 999, 1003 (2d Cir.1976) (actual intent required to deny discharge), and *Georgia-Pacific Corp. v. Lumber Products Co.*, 590 P.2d 661, 665 (Okla.1979) (actual intent, as distinguished from intent presumed in law, is an essential element under the Uniform Fraudulent Conveyance Act). This required intent is not proven on the record in this proceeding, even if violation of the State law is an element to be considered.

---

1. Question 12a of the Statement of Affairs, Official Form 7 specifically excludes "ordinary and usual presents to family members ..."

Section 727(a)(2) may be reduced down to four elements:

(1) That the act complained of was done at a time subsequent to one year before the date of the filing of the petition;

(2) With intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code;

(3) That the act was that of the debtor or his duly authorized agent;

(4) That the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done.

*United Bank of Denver, N.A. v. Greenwalt (In re Greenwalt)*, 48 B.R. 804, 806 (D.Colo.1985) (citing 4 *Collier on Bankruptcy* ¶ 727.02(b) (15th ed. 1985)). The debtor's fraudulent intent may be shown by circumstantial evidence or course of conduct. *Strunk,* 671 F.2d at 395.

Again we find a failure of the evidence to establish Swift's intent to hinder, delay or defraud creditors. The debtor testified he paid the second mortgage note because it was his oldest outstanding indebtedness and it carried a high interest rate of 17½%. Although evidence was elicited showing a prior course of conduct by the lien holder to renew the note upon payment of the outstanding interest, the proof is the Bank required payment in full and would no longer renew the note. This evidence was unrefuted by the plaintiff.

Accordingly, entitlement to discharge is determined solely by federal law. *Reed,* 700 F.2d at 991. Section 727 is construed liberally in favor of debtors. *Devers v. Bank of Sheridan, Montana (In re Devers),* 759 F.2d 751 (9th Cir.1985). An objector must prove by a preponderance of evidence debtor's fraudulent intent to conceal assets, failure to disclose assets, or a purposeful scheme to hinder, delay or defraud creditors. *Strunk,* 671 F.2d at 395.

Under the facts and circumstances of this case the Bank has failed to establish the transactions complained of were fraudulently concealed or made with an intent to hinder, delay or defraud creditors. We similarly find a failure to establish a scheme of purposeful liquidation of assets in order to fraudulently enhance or create exempt property from non-exempt assets.

Accordingly, judgment will be entered in favor of the debtor-defendant, Swift.